107 F.3d 415
 Delos M. PALMER, Plaintiff-Appellee/Cross-Appellant,
v.
FOX SOFTWARE, INC.; Fox Holdings, Inc.; Richard G.
LaValley, Jr.; David A. Fulton; Fulton
Associates, Inc., Defendants,
Richard G. LaValley, Sr.; Gerard Associates, Inc.,
Defendants-Appellants/Cross-Appellees.
 Nos. 94-3994, 94-4009.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 12, 1996.
Decided Feb. 20, 1997.
Rehearing and Suggestion for Rehearing
En Banc Denied April 7, 1997.
 
 John R. Crossan, argued and briefed, William J. Cook, Barry F. Irwin, Willian, Brinks, Olds, Hofer, Gilson & Lione, Chicago, IL, Vincent Leland Barker, Jr., Thomas A. Meehan, Christina Lou Brown, Willian, Brinks, Olds, Hofer, Gilson & Lione, Toledo, OH, for Plaintiff-Apellee Cross-Appellant.
 Ernie L. Brooks, argued and briefed, Thomas A. Lewry, briefed, Brooks & Kushman, Southfield, MI, Reginald S. Jackson, Jr., briefed, Thomas G. Mackin, Janine Thompson Avila, Sarah Steele Riordan, Connelly, Soutar & Jackson, Toledo, OH, for Defendant-Appellant Cross-Appellee.
 Before: JONES, BOGGS, and BATCHELDER, Circuit Judges.
 BATCHELDER, Circuit Judge:
 
 
 1
 The plaintiff filed this diversity action in the United States District Court for the Northern District of Ohio. The jury found for the plaintiff and awarded damages. Before us are numerous appeals and cross appeals. For the reasons that follow, we reverse the final judgment of the district court.
 
 I. FACTS AND PROCEDURAL HISTORY
 A. THE CAST
 
 2
 This action has three related "foxes": Fox Research, Inc., Fox Software, Inc., and Fox Holdings, Inc.
 
 
 3
 Fox Research was formed in 1983 by Defendant-Appellant Richard LaValley, Sr. ("LaValley"), who became chairman and a director. Plaintiff-Appellee Delos Palmer was one of nine original Fox Research investors, each of whom invested $25,000. In 1984, seven of the nine, including Palmer and LaValley invested an additional $15,000. LaValley subsequently acquired the interest of the remaining two of the nine investors, resulting in his having a 3/9 ownership interest. Defendant David Fulton was president of Fox Research. Fulton was not a shareholder in Fox Research.
 
 
 4
 Defendant-Appellant Gerard Associates, Inc., a management company that LaValley owns, became the tenth investor in Fox Research in 1984 and 1985, acquiring a 1/10 interest. As a result, Palmer's 1/9 interest became a 1/10 interest, and LaValley's 3/9 interest became a 3/10 interest. Other ownership interests in Fox Research diminished similarly.
 
 
 5
 Defendant Fox Software was a corporation that LaValley and Fulton owned. In 1992, Microsoft Corporation acquired Fox Software.
 
 
 6
 Fulton and his wife ran a software consulting firm, Dacor Computer Systems, Inc. Under a subcontract from Fox Software, Dacor wrote computer programs.
 
 
 7
 Fulton formed Fulton Associates in 1985 after selling his interest in Dacor to his wife as part of a divorce settlement.
 
 
 8
 In 1986, LaValley and Fulton formed defendant Fox Holdings as a joint venture between Gerard Associates and Fulton Associates. Fox Holdings developed programs called FoxBASE, FoxBASE+, FoxBASE/Mac, and FoxPro ("Fox Programs"), each subsequent version being an improvement over the previous one. When Microsoft acquired Fox Software, Fulton became a Microsoft vice president. He and his programming team from Fox Holdings moved to Seattle.
 
 
 9
 LaValley was a longtime lawyer to Palmer, Palmer's family, Fox Research, Fox Software, Fulton, Fulton Associates, Dacor, and Gerard Associates. He is the father of defendant Richard LaValley, Jr. ("LaValley, Jr."), also a lawyer.
 
 B. THE COMPLAINT
 
 10
 Palmer filed this four-count action individually and derivatively, as a shareholder, on behalf of all of the shareholders of Fox Research, Inc., alleging that the defendants improperly took knowledge which Fox Research paid for and owned, and opportunities which Fox Research should have had, and used them to develop the Fox Programs under the ownership of Fox Holdings. According to the complaint, Fox Research was established to own and finance development of computer database software programs conceived and developed by Fulton and marketed by Fox Software. Palmer alleges that LaValley promised the Fox Research shareholders, all of whom were clients of LaValley or his law firm, that they would have database software development opportunities beyond the initial application programs and FoxBASE. The complaint also alleges that LaValley and Fulton improperly increased their own interest in and control over Fox Research without presenting corporate opportunities, such as the additional 2/9 interest in Fox Research that LaValley acquired, to all shareholders, and that, without the approval of Fox Research shareholders, LaValley and Fulton made deals which harmed Fox Research yet benefited LaValley, Fulton, and the corporations which they owned and in which Palmer and all other Fox Research shareholders except LaValley had no interest. Finally, when Microsoft sought to buy out Fox Software, LaValley is alleged to have induced Fox Research shareholders, some of whom were still his or his law firm's clients and some of whom were not, to meet and to execute (1) an exclusive, irrevocable license of their right, title, and interest in FoxBASE software to Fox Holdings, which would enable the merger with Microsoft to proceed, and (2) a release from any claims to clarify, release, or ratify all acts of Fox Research vis-a-vis Fox Holdings, Fox Software, and their shareholders, officers, and directors.
 
 
 11
 Count I is a claim for misappropriation of corporate opportunities, and alleges breach of corporate fiduciary duties; Count II alleges unjust enrichment and constructive trust, and Count III alleges attorney malpractice. Palmer dismissed Count IV before trial.
 
 C. TRIAL COURT PROCEEDINGS
 
 12
 Prior to trial, the district court granted partial summary judgment to the defendants on the "plaintiff's derivative claim."[1] The case then proceeded to trial on the remaining claims. Using a special-verdict form, the jury awarded Palmer $22 million in compensatory damages, which the district court later remitted to $13.7 million.
 
 
 13
 On Counts I and II, the jury found that neither LaValley nor Fulton "performed his duties in good faith and in the manner he reasonably believed to be in the best interests of Fox Research, Inc., and its shareholders...." The jury was asked:
 
 
 14
 Do you find that the material facts as to LaValley['s] relationship or interest and as to the contract or transaction were disclosed or were known to the shareholders and the contract or transaction was specifically approved at a meeting of the shareholders held for such purpose by a vote of the majority of the shareholders not interested in the contract or transaction?
 
 
 15
 The answer was "no."
 
 
 16
 After concluding that Fulton had engaged in self dealing, the jury was asked:
 
 
 17
 Do you find that the material facts as to Fulton's relationship or interest and as to the contract or transaction were disclosed or were known to the shareholders and the contract or transaction was specifically approved at a meeting of the shareholders held for such purpose by a vote of the majority of the shareholders not interested in the contract or transaction?
 
 
 18
 Again, the answer was "no."
 
 
 19
 Moreover, the jury found that LaValley, as an officer, director, or controlling shareholder of Fox Research--and Fulton as an officer of Fox Research--"acquired knowledge and information about a possible investment or business opportunity in Fox Research's line of business, or advantageous to Fox Research[,]" an investment which Fox Research had the financial ability to make.
 
 
 20
 There were originally nine equal shareholders in Fox Research. LaValley bought out two, leaving seven shareholders altogether. LaValley originally had 3/9 of Fox Research, and the remaining six each had 1/9. The jury further found that Palmer--one of the six--was entitled to a 1/7, instead of a 1/9, interest in Fox Research.[2]
 
 
 21
 Also with respect to Counts I and II, the jury found that LaValley, as an officer, director or controlling shareholder did not keep correct and complete corporate books, records, and minutes; he knowingly made false entries with an intent to deceive; he did not hold legally required annual meetings of Fox Research; Fulton was obligated to assign copyrights to Fox Research; and the defendants fraudulently concealed their misconduct from Palmer. Although the jury found that Palmer had breached his duty as a Fox Research director to keep informed of corporate affairs with the care of an ordinarily prudent person under similar circumstances, it did not find that Palmer knew or should have known of the injuries he claims and their cause by June 23, 1988, four years before he filed his complaint, a finding which was significant for the statute of limitations.
 
 
 22
 On Count III, the jury found that LaValley had an attorney-client relationship with Palmer vis-a-vis Fox Research,[3] and that LaValley breached a duty to provide competent legal services.
 
 
 23
 The jury found Palmer was damaged as a result of all of these actions. Finally, with respect to all three counts, the jury found that LaValley, Fulton, and LaValley, Jr., acted with malice toward Palmer. The jury added a handwritten note on the special-verdict form after each of the questions respecting malice that said, "Regarding extremely reckless behavior only."
 
 
 24
 The district court ordered judgment entered against LaValley, Fulton, Gerard Associates, and Fulton Associates, and dismissed with prejudice the action as against LaValley, Jr., apparently recognizing that the jury's finding that LaValley, Jr., acted with malice toward Palmer "[r]egarding extremely reckless behavior only" was inconsistent with its finding that LaValley, Jr., was not liable. Consistent with the settlement agreement that the plaintiff and Fulton had reached before trial, Fulton's liability, given the size of the verdict, was limited to $3 million.
 
 
 25
 After the trial, the district court summarily denied several motions by the defendants. Among them were a motion for judgment as a matter of law, and a motion for a new trial on the issue of damages, which the district court denied on the condition that the plaintiff accept a remittitur of $8,328,545, leaving a verdict in the amount of $13,671,455, which the district court calculated to be the maximum the jury could reasonably find to compensate the plaintiff for his loss. The plaintiff accepted the remittitur. The court also denied the plaintiff's motion to award him $88 million in punitive damages from LaValley, $22 million in punitive damages from Fulton, and $50,000 punitive damages from LaValley, Jr., and more than $1.7 million in attorneys' fees and expenses. Finally, the court denied the plaintiff's motion under FED.R.CIV.P. 59(e) to amend the judgment to add an award of $2.3 million in prejudgment interest.
 
 
 26
 Defendants LaValley and Gerard Associates timely appeal the final judgment, including the denial of their post-trial motions. Plaintiff Palmer cross-appeals the denial of pre-judgment interest, punitive damages and attorneys' fees.
 
 II. DISCUSSION
 A. STANDARD OF REVIEW
 
 27
 In a diversity action, a federal court applies state substantive law to state-law claims. See Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938) (citing Baltimore & O. R. Co. v. Baugh, 149 U.S. 368, 401, 13 S.Ct. 914, 927, 37 L.Ed. 772 (1893) (Field, J., dissenting)).
 
 
 28
 The appellants and plaintiff together present several issues for review. We consider first the appellants' contention that the district court erred in denying their motion for judgment as a matter of law. Since the appellants prevail on that claim, we need not address the remaining issues raised on appeal.
 
 
 29
 We have recently held that a federal court sitting in diversity reviews de novo legal determinations raised by a Rule 50 motion, and must apply the forum state's standard of review "only when a Rule 50 challenge is mounted to the sufficiency of the evidence supporting a jury's findings. No deference is appropriate in diversity cases to the trial court's resolutions of legal questions." K & T Enterprises, Inc. v. Zurich Ins. Co., 97 F.3d 171, 176 (6th Cir.1996). Importantly, "it is clear that we need show no deference to the trial court's assessment of the sufficiency of the evidence before a jury, even if state law so requires." Id. To the extent that Appellant's Rule 50 motion is based on a challenge to the sufficiency of the evidence supporting the jury's verdict, we must look to the law of Ohio to determine the standard under which we review the motion. Ohio law requires that we construe the evidence most strongly in favor of the nonmovant. See Sanek v. Duracote Corp., 43 Ohio St.3d 169, 172, 539 N.E.2d 1114, 1117 (1989) (citations omitted).[4]
 
 
 30
 B. THE NATURE OF THE MISAPPROPRIATION CLAIMS
 
 
 31
 After the closing arguments at trial, the district court instructed the jury that Palmer could recover his pro rata share of any injury to the corporation. The appellants say this was erroneous, because it allowed recovery of derivative relief after the district court had granted the appellants' summary judgment motion on the derivative claims. Citing Griffin v. Michigan Dep't of Corrections, 5 F.3d 186, 190 (6th Cir.1993), they claim this violated the law of the case.
 
 
 32
 Appellants' reliance on Griffin is misplaced. There, we made it clear that the prior order that constituted the law of the case was a final order that the state had a duty to appeal timely. Here, the order of partial summary judgment, although the law of the case, was not final until the district court entered its judgment disposing of the entire case. However, that order, although not a final order for purposes of appeal at the time it was entered, nonetheless dismissed the derivative claims in the complaint, and became final when the district court entered the judgment from which defendants and plaintiff now appeal. Although he could have done so, the plaintiff does not challenge that order dismissing the derivative claims in this appeal.
 
 
 33
 The district court's order did not consider whether the plaintiff's claims were derivative; rather, the court assumed that they were derivative and dismissed them because the plaintiff was not properly representative of the other allegedly wronged shareholders. Although the plaintiff has not challenged that order, we think that to decide this appeal properly, we must consider whether the complaint raises derivative claims only or whether it has raised claims that the plaintiff may bring directly. We address first the misappropriation claims in Count I.
 
 
 34
 The general rule in Ohio is stated in Adair v. Wozniak, 23 Ohio St.3d 174, 492 N.E.2d 426 (1986) (syllabus):
 
 
 35
 [O]nly a corporation and not its shareholders can complain of an injury sustained by, or a wrong done to, the corporation. However, this general principle has no application where the wrongful acts are not only against the corporation but are also violations of a duty arising from contract or otherwise owed directly by the wrongdoer to the shareholder.
 
 
 36
 Id. at 176, 492 N.E.2d at 428 (internal citations omitted).
 
 
 37
 In Crosby v. Beam, 47 Ohio St.3d 105, 548 N.E.2d 217 (1989), the Ohio Supreme Court announced an exception to the general rule for actions brought by minority shareholders in close corporations. There, the court held that majority shareholders owe a fiduciary duty to minority shareholders, and where the majority shareholders use their control to prevent the minority from having equal opportunity in the corporation, and the minority shareholder is injured in a way that is separate and distinct from the injury to the corporation, the complaining shareholder has a direct, as opposed to a derivative, action. Id. at 108-110, 548 N.E.2d at 220-21. Subsequently, in Weston v. Weston Paper & Mfg. Co., 74 Ohio St.3d 377, 379-80, 658 N.E.2d 1058, 1060-61 (1996), the Ohio Supreme Court reaffirmed that the Crosby exception to the general rule was an exception peculiar to closely held corporations, and would not be extended to corporations not closely held.
 
 
 38
 The Ohio Supreme Court has not addressed the issue of direct versus derivative actions in the circumstances presented by the case before us. The essence of Palmer's claim is that LaValley, another minority shareholder in Fox Research, used his position as chairman of Fox Research to advance the interests of his own separate companies, to the detriment of Fox Research, and thus injured Palmer as a minority shareholder. The actions of which Palmer complains were not the actions of a majority or controlling shareholder at all; neither did the actions complained of injure Palmer in a way that was separate and distinct from the injury to the corporation. To the contrary, Palmer specifically complains that LaValley injured Fox Research by taking from it opportunities that Palmer contends belonged to it, and by preventing the corporation from making profits. Those injuries were shared by all of the other shareholders, including LaValley, whose minority shares were diminished in value to the same extent as all other shares.
 
 
 39
 We note that at least one appellate court in Ohio has extended the Crosby rationale to apply to actions by a "controlling" shareholder who was not a majority shareholder. See McLaughlin v. Beeghly, 84 Ohio App.3d 502, 506-07, 617 N.E.2d 703, 705-06 (1992). The facts in that case, however, are sufficiently different from those here, that we cannot conclude that the Ohio Supreme Court would extend McLaughlin to this case.[5]
 
 
 40
 We hold that Palmer's claims of misappropriation in Count I are wholly derivative. Having granted judgment to the defendants on the derivative claim prior to trial, the district court erred in permitting the jury to consider any evidence relative to that count, and the judgment as to Count I must be reversed.
 
 
 41
 The jury made no finding on the claims in Count II--unjust enrichment and constructive trust. But as the district court correctly noted in its order of February 4, 1994, Count II raises no basis for recovery in addition to what the plaintiff asserted in Count I. Therefore, because the plaintiff may not recover on Count I, neither may he recover on Count II.
 
 C. ATTORNEY MALPRACTICE
 
 42
 The appellants contend that the district court's grant of summary judgment on the derivative claims left Palmer with, at best, an individual claim for attorney malpractice. The appellants point out that Count III of the complaint, which alleged attorney malpractice, claims no injury to Palmer separate and distinct from that to the corporation, and that, in any event, Palmer failed to prove any such individual and non-derivative claim. For the reasons explained above, we agree that Palmer is not entitled to recover for acts of malpractice that resulted in injury to the corporation, and are therefore solely derivative claims. Because we think, however, that read broadly, Count III can be construed to allege a claim of separate injury to Palmer, in addition to the derivative claims, we review the record to determine whether Palmer presented sufficient evidence of attorney malpractice resulting in injury peculiar to him to sustain the jury's verdict.
 
 
 43
 The elements of legal malpractice in Ohio were stated early in this century. See Jablonski v. Higgins, 6 Ohio Misc.2d 8, 10, 453 N.E.2d 1296, 1298 (Ohio Com.Pl.1983) (citing Long v. Bowersox, 19 Ohio Dec. 494, 500-01, 8 Ohio N.P. (N.S.) 249, 255-58 (C.P.1909)). As recently stated, the elements are "(1) an attorney-client relationship giving rise to a duty, (2) a breach of that duty, and (3) damages proximately caused by the breach." State ex rel. Sellers v. Gerken, 72 Ohio St.3d 115, 117, 647 N.E.2d 807, 810 (1995) (citing Krahn v. Kinney, 43 Ohio St.3d 103, 105, 538 N.E.2d 1058, 1060 (1989)).
 
 
 44
 Palmer points first to the fact that LaValley had for many years been the attorney for Palmer in all of his personal, business and family affairs, claiming that under those circumstances, he "felt and expected" that LaValley was acting as his attorney with respect to Fox Research matters as well. However, the reasonableness of that expectation is undermined by the fact that in the offering circular LaValley sent to prospective investors in Fox Research, including Palmer, LaValley identified himself as counsel for the corporation. Further, as the appellants point out, Palmer himself states in his brief that the damages he claims as a result of the alleged acts of malpractice "were what Fox Research should have obtained and ultimately paid pro rata to Palmer--but did not obtain or pay to him because of LaValley's wrongdoing." The fact that Palmer claims only his pro rata share of those damages does not change the character of his claim. The injury claimed was to the corporation.
 
 
 45
 We have reviewed the voluminous record in this case, and conclude, albeit reluctantly, that the evidence of attorney malpractice presented by Palmer falls short of meeting the requirements for establishing an attorney malpractice claim resulting in injury to Palmer individually. We do not, by this conclusion, condone the conduct of LaValley, which we think the jury disapproved of with good cause. However, because the evidence supports only derivative claims of injury as a result of LaValley's actions, we hold that the judgment on Count III must be reversed.
 
 III. CONCLUSION
 
 46
 We REVERSE the judgment of the district court and REMAND this action with instructions to enter judgment for the appellants.
 
 
 
 [1]
 After reviewing the complaint, the motion for summary judgment, and the district court's memorandum and order, we conclude that, although the order might have been more clear, it dismissed each count of the complaint to the extent of the derivative claims contained therein
 
 
 [2]
 The appellants do not challenge this finding
 
 
 [3]
 The jury found no such relationship between Palmer and LaValley, Jr
 
 
 [4]
 Sanek addresses motions for directed verdict and for J.N.O.V., see 43 Ohio St.3d at 172, 539 N.E.2d at 1117, which Rule 50 incorporates into the motion for judgment as a matter of law. K & T Enters., 97 F.3d at 175 (citing Black v. Ryder/P.I.E. Nationwide, Inc., 15 F.3d 573, 583 (6th Cir.1994))
 
 
 [5]
 In McLaughlin, the evidence established that although the shares were equally held by three individuals, the "controlling" shareholder held voting rights of one of the others and "[t]o all intents and purposes, [he] controlled the voting power of [that other shareholder] as fully as if he actually owned those shares." 84 Ohio App.3d at 507, 617 N.E.2d. at 706