Madeline R. BOVEE, et al. v.
LYNDONVILLE SAVINGS BANK &
TRUST CO., et al.

[811 A.2d 143]

No. 01-346

August 19, 2002. Plaintiff shareholders of Lyndonville Savings Bank & Trust Company appeal from a superior court judgment dismissing their complaint against the bank and several of its officers and directors. Plaintiffs contend the trial court erroneously: (1) failed to address their breach of contract claim; (2) failed to address their civil conspiracy claim; (3) ruled that they lacked standing to bring a direct action against the bank; and (4) found that they had failed to state a derivative claim against the bank. We affirm.

This case is one of several resulting from the recent troubles of Lyndonville Savings. In December 1993, plaintiff Roger Lussier was convicted in federal district court on a variety of criminal charges, including bank fraud, money laundering, and receipt of illegal commissions, committed during his tenure as the bank's president and chairman of the board. Lussier was sentenced to a prison term of forty-six months, ordered to pay a fine of $100,000, and ordered to pay restitution of over $426,000.

In September 1995, following Roger Lussier's conviction, the bank filed a civil suit in federal district court against Lussier and his wife Evelyn, seeking immediate payment of the restitution award, damages based on Roger Lussier's status as an officer and director of a bank in the Federal Reserve System, and recovery under several state law theories, including breach of fiduciary duty and fraudulent conveyance of certain bank shares to Evelyn Lussier. In February 1996, the district court dismissed Evelyn Lussier as a defendant based on her agreement with the bank to reverse the allegedly fraudulent conveyance by returning the stock to its pretransfer status. In July 1997, the bank abandoned that portion of the complaint based on Roger Lussier's status as a federal bank officer because the bank was not a member of the Federal Reserve. Trial proceeded on the remaining claims, resulting in a judgment for the bank on the state law claims totaling over $8 million. The district court denied a subsequent motion to set aside the judgment for lack of subject matter jurisdiction, but the Second Circuit Court of Appeals vacated and dismissed, holding that federal law did not entitle the bank to seek a separate civil judgment on the restitution award, and that — since the bank had abandoned its claim based on Federal Reserve membership — the district court lacked pendent jurisdiction over the state law claims. *Lyndonville Sav. Bank & Trust Co. v. Lussier,* 211 F.3d 697, 703-05 (2d Cir. 2000).

In June 2000, following dismissal of the federal action, the bank filed a new civil suit against Roger Lussier in Caledonia Superior Court, seeking, inter alia, an attachment of the bank shares transferred back to Roger as part of the agreement dismissing Evelyn Lussier from the federal action. The trial court granted Evelyn Lussier's motion to intervene in the new lawsuit, noting that her earlier agreement reversing the transfer of stock in return for her dismissal from the federal action was void due to the district court's lack of subject matter jurisdiction, and ordered the bank to issue new certificates reflecting the percentage of the Lussiers' ownership interests as of 1995.

Shortly thereafter, plaintiffs — comprised of various bank shareholders including Roger and Evelyn Lussier — filed this action against the bank and several of its officers and directors.[1] The amended complaint alleged that defendants had: erroneously failed to prosecute bad faith actions against its various insurance companies, instead blaming the losses on Roger Lussier; filed the federal lawsuit against Roger and Evelyn Lussier knowing that there was no reasonable basis for the assertion of federal jurisdiction or the fraudulent conveyance claim; engaged in lending practices that did not comport with federal regulations; and failed to provide them with requested information on bank operations and expenses related to the federal litigation. Based on these allegations, the complaint stated claims for breach of contract, which "depriv[ed] them of the full value of their investment"; negligence in failing to provide information to plaintiffs, and in failing adequately to supervise bank officers, resulting in "pecuniary loss"; breach of an affirmative duty to "discharge their responsibilities in regard to [the bank's] conduct of its banking and corporate business"; violation of the Vermont Securities Act; wrongful deprivation of Evelyn Lussier's ownership interest in her stock; and a shareholder derivative claim based on defendants' alleged failure adequately to discharge their duties to the bank.

Defendants moved to dismiss the complaint, asserting that plaintiffs lacked standing to bring direct claims against the bank, and that the derivative claim was procedurally barred. The trial court agreed, granted the motion to dismiss, and entered judgment for defendants. This appeal followed.

Plaintiffs contend the court erred in failing specifically to address the breach of contract claim, and in concluding that plaintiffs lack standing to state a direct claim for breach of contract against the bank. The general principles governing shareholder suits are well settled. In a derivative suit, the shareholder sues on behalf of the corporation for harm done to the corporation; in a direct action, the shareholder brings suit individually, or on behalf of a class of shareholders, for injuries done to them in their individual capacities. *Kramer v. W. Pac. Indus., Inc.*, 546 A.2d 348, 351 (Del. 1988); see *Lash v. Lash Furniture Co. of Barre, Inc.*, 130 Vt. 517, 522, 296 A.2d 207, 211 (1972) (shareholder derivative action is one brought in the interest of corporation). To have standing to sue individually, the shareholder must allege an injury separate and distinct from other shareholders, or a wrong involving a contractual right of the shareholder that exists independently of any right of the corporation. *Kramer*, 546 A.2d at 351.

---

[1] Plaintiffs also filed a separate action against the attorneys who had represented the bank in the federal civil action. Caledonia Superior Court, Docket No. 358-11-00CaCv. The trial court granted the defendants' motion to dismiss the action based on lack of standing. Plaintiffs have filed a separate appeal from the judgment of dismissal. Vermont Supreme Court, Docket No. 01-347.

Here, plaintiffs' complaint alleged that the bank committed a breach of contract by violating "agreements between plaintiffs as shareholders of the bank," thereby depriving them of information necessary to make informed decisions about their investments in the bank, and "depriving them of the full value of their investment." The claim is patently derivative. "[A]ctions charging 'mismanagement which depress[] the value of stock [allege] a wrong to the corporation; i.e., the stockholders collectively, to be enforced by a derivative action.'" Id. at 353 (citation omitted); see also Strougo v. Bassini, 282 F.3d 162, 174 (2d Cir. 2002) (shareholders lack standing to sue directly for loss in share value resulting from mismanagement); Strasenburgh v. Straubmuller, 683 A.2d 818, 829 (N.J. 1996) ("Shareholders cannot sue for injuries arising from the diminution in value of their shareholdings resulting from wrongs allegedly done to their corporations.") (citation omitted). Although plaintiffs attempt to characterize the claim as a separate and distinct injury arising from a breach of their "agreement" — and implied good faith covenants therein — with the bank (presumably referring to the corporate charter, bylaws, and similar general corporate instruments), plaintiffs have not alleged or shown that the bank breached any contractual right separate from that of all other shareholders of the corporation. Therefore, the claim is derivative in nature. See Lipman v. Batterson, 738 N.E.2d 623, 627-28 (Ill. App. Ct. 2000) (where alleged breach of contract results in wrong to corporation, action is derivative). Plaintiffs' corollary claim concerning the bank's alleged failure to provide information necessary to make informed decisions about their investments similarly fails to establish harm distinct from other shareholders, and also fails adequately to allege what investment decisions were affected or how plaintiffs were

thereby harmed. See V.R.C.P. 8(a) (complaint must set forth plain statement showing that pleader is entitled to relief); Limoge v. People's Trust Co., 168 Vt. 265, 274, 719 A.2d 888, 893 (1998) (pleading must give fair notice of claim and grounds upon which it rests). Finally, although the court did not address the breach of contract count separately from the other claims, its conclusion that plaintiffs failed to demonstrate a distinct injury sufficient to establish standing was plainly meant to apply to all of plaintiffs' claims. We therefore discern no error in this regard.

Plaintiffs also assert that the court erred in dismissing the balance of their claims on the ground that they lacked standing. The claims for negligence and what plaintiffs styled "voluntary assumption of a duty" were premised on allegations that defendants failed to exercise reasonable care in communicating information to plaintiffs, in supervising bank employees, officers and agents to ensure that they acted in conformity with statutory, regulatory, and other norms, and in discharging their responsibilities over banking and corporate business. Apart from the alleged impact on plaintiffs' investment and the value of their shares, which affected all shareholders, plaintiffs' complaint fails adequately to allege or demonstrate any separate and discrete injury entitling them to bring a direct action. Kramer, 546 A.2d at 351. Although plaintiffs argue on appeal that they suffered direct injury through "dilution" of their voting rights resulting from the federal order requiring reissuance of the Lussiers' stock to the bank, see, e.g., In re Tri-Star Pictures, Inc. Litig., 634 A.2d 319, 330 (Del. 1993) (claim of stock dilution and corresponding reduction in voting power may state individual claim), the complaint did not allege any impact on voting rights except with respect to Evelyn Lussier in Count V. Hence, we discern no error in the court's dismissal

of the claims for negligence and voluntary assumption of a duty.[2]

Although the specific claim for wrongful deprivation of Evelyn Lussier's ownership interest in her stock during the period of the federal lawsuit appears to satisfy the direct injury requirement, defendants argued correctly at trial that the claim was waived. Lussier voluntarily entered into an agreement to reconvey the stock to the bank in return for dismissal of the fraudulent conveyance count from the federal lawsuit, and raised no issue on appeal from the federal judgment concerning the agreement or the fraudulent conveyance claim. The fact that the judgment was ultimately reversed, and the settlement effectively voided, does not undermine the validity of the waiver. Having voluntarily relinquished ownership of the stock, she cannot now predicate claims against the bank for wrongful deprivation of the stock. See *Russell v. Atkins*, 165 Vt. 176, 180, 679 A.2d 333, 336 (1996) (plaintiffs bound by settlement of suit, barring subsequent claim).

Plaintiffs further contend that the court erroneously failed to address their civil conspiracy claim. Although they alleged six separate counts in their amended complaint, plaintiffs did not set forth a claim for "civil conspiracy." Plaintiffs cite language from a single paragraph in the complaint alleging that defendants acted "as part of a common design or plan." While the allegation might have been sufficient to satisfy our notice pleading rules (an issue we need not decide), plaintiffs did not move to amend the complaint to state such a claim, did not refer to such a claim in opposing the motion to dismiss, and raised the issue for the first time only on

appeal. We conclude, therefore, that the court did not err in failing to address the purported claim in its order granting the motion to dismiss. See *Limoge*, 168 Vt. at 274, 719 A.2d at 893 (upholding court's refusal to address claim that bank violated covenant of good faith and fair dealing where there was no mention of claim in complaint, nor any request to amend the complaint, and claim was raised for first time in motion for summary judgment).

Finally, plaintiffs contend the court erred in dismissing their derivative claim. The trial court correctly ruled, however, that plaintiffs failed to meet the threshold requirement of 11A V.S.A. § 7.40(b), requiring that a derivative complaint "allege with particularity the demand made, if any, to obtain action by the board of directors and either that the demand was refused or ignored or why he or she did not make the demand." Plaintiffs have not alleged or demonstrated either compliance with this requirement, or reasons for their failure to comply. Accordingly, the derivative claim was properly dismissed. See, e.g., *Albers v. Edelson Tech. Partners*, 31 P.3d 821, 828-29 (Ariz. Ct. App. 2001) (failure to comply with statutory demand requirement compels dismissal of shareholder derivative suit).

*Affirmed.*

---

[2] Plaintiffs have not briefed or challenged the court's dismissal of their claim predicated on an alleged violation of the Vermont Securities Act.