Ratner v. Vill. Square at Pico Condo. Owners Ass'n, Inc., No. 91-2-11 Rdcv (Teachout, J., Aug. 28, 2012)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

### STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Rutland Unit** | **Docket No. 91-2-11 Rdcv** |

**MARCIA RATNER,**
     **Plaintiff**

     **v.**

**VILLAGE SQUARE AT PICO CONDOMINIUM OWNERS ASS'N, INC., et al.,**
     **Defendants**

### DECISION
### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendants' Motion for Summary Judgment, filed May 1, 2012. Oral argument was held on the motion on July 19, 2012. Defendants were represented by Robert R. McKearin, Esq. Plaintiff Marcia Ratner represented herself.

**Facts**

As Plaintiff Marcia Ratner is the nonmoving party, these facts are presented in the light most favorable to her. Plaintiff's suit is based on the alleged failure of Defendants, including the Village Square at Pico Condominium Owners Association, Inc. ("Association") and three members of the Association's Board of Directors ("Board"), to maintain adequate reserve funds for the maintenance of the buildings comprising the Village Square at Pico ("Village Square") condominium development. The failure to maintain these reserve funds allegedly resulted in the need for special assessments. Plaintiff asserts that this failure supports claims under a variety of legal theories including negligence, fraud, breach of fiduciary duty, and bad faith.

Plaintiff owns a unit in the Village Square condominium development. Plaintiff purchased her unit on November 21, 2001. As part of the sale process, Plaintiff received a Certificate of Resale, a copy of the Condominium Declaration ("Declaration"), a copy of the Association's bylaws, and a balance sheet addressing the Association's finances on November 17, 2001. The Declaration expressly provides authority for the Board to levy special assessments if there are inadequate funds available to cover the repair of common areas. Under the Declaration, unit owners are obligated to pay these special assessments, and the Association has the authority to initiate a foreclosure action if they are not paid.

On December 7, 2004, the Board notified the unit owners including Plaintiff that a special assessment was to be levied for roof repair work, and would be in effect from January of 2005 through June of 2007. The need for special assessments continued, however, and they did not end in 2007.

In 2007, several unit owners including Plaintiff were without hot water for an extended period of time. Due to this hot water shortage as well as her opposition to the special assessments, Plaintiff stopped paying all of her condominium assessments in October 2007. In response, the Association brought a foreclosure action against Plaintiff. On December 28, 2010, this Court awarded the Association $38,061.08 in damages Ms. Ratner and awarded Ms. Ratner a setoff in the amount of $3000 to compensate for the deprivation of hot water over a 10 month period.

Plaintiff initiated the present action by filing a Complaint on February 14, 2011. The Complaint asserts that the Association as well as two current and one former member of the Association's Board had harmed her by failing to fund the reserve account in an adequate manner so as to prevent the need for special assessments to pay for condominium repairs.

**Analysis**

Defendants now move for summary judgment. They present two major lines of argument. First, they argue that because Ms. Ratner's claims are undifferentiated from the claims of other unit owners, she does not have standing to bring this suit. Second, they argue that her claims are time barred by the statute of limitations.

*Standing*

Ms. Ratner brings this suit as an individual unit owner in the Village Square condominium developments against its Association and multiple Association Board members. To have standing to pursue such a direct action, Ms. Ratner must allege a harm that is separate and distinct from other unit owners or a wrong involving a contractual right of hers that exists independently of any right of the corporation. See *Bovee v. Lyndonville Sav. Bank & Trust Co.*, 174 Vt. 507, 508 (2002) (mem.).

Ms. Ratner alleges that the Association failed to maintain adequate reserve funds and that this failure necessitated the levying of special assessments. These claims necessarily involve all of the unit owners at Village Square. The special assessments, which Ms. Ratner argues were unnecessary, were imposed equally on all unit owners. Thus, the alleged injury stemming from the failure to maintain proper reserves is not unique to Ms. Ratner. As such, Ms. Ratner lacks standing to bring this direct action.

Ms. Ratner attempts to avoid this conclusion by arguing that the failure to maintain adequate reserves "uniquely benefited or harmed each homeowner." The basis for this argument appears to be that longstanding unit owner derived a greater benefit

2

from the lower Association fees before the imposition of the special assessments in January 2005 and that unit owners, such as Ms. Ratner, who purchased their units at a later date were harmed by the pre-existing policy of low Association fees that led to inadequate reserve funds and the corresponding imposition of special assessments. This argument ignores that the fact that Ms. Ratner, at a minimum, is similarly situation to any unit owners who purchased their units after she purchased hers. According to the undisputed evidence, at least 60 units have been sold since 2004, and additional units were likely sold between 2001 and 2004. These new unit owners all stand in the same shoes as Ms. Ratner with regard to bearing the burden of the special assessments without receiving the benefit of the years of ownership with low Association fees.

The theoretical uniqueness of the precise moment in time when Ms. Ratner purchased her unit cannot give her standing to bring this suit. In *Bovee*, the Vermont Supreme Court considered and rejected the argument that different shareholders in a corporation suffered unique injuries because of the differing lengths of time that they held their shares. See *Bovee v. Lyndonville Sav. Bank & Trust Co.*, 174 Vt. 507, 509 (2002) (mem.) As in *Bovee*, the individual unit owners here all suffered the same general injury if the Association failed to maintain adequate reserves. The fact that the individual dollar amount of the injury may have varied from owner to owner is not sufficient to allow Ms. Ratner to bring this direct action.

Ms. Ratner's claims of breach of fiduciary duty are also insufficient to give her standing to sue. She asserts that because each director owes a duty of undivided loyalty that any breach of this duty creates an individual injury as to each homeowner. This is an incorrect understanding of Vermont law.

The fiduciary duty imposed on directors of a corporation, which is the same duty imposed on the Association Board members, requires that they act "in good faith, with the care an ordinarily prudent person in a like position would exercise under similar circumstances, and in manner that they reasonably believe[] to be in the best interest of the corporation." 11B V.S.A. § 8.30. The best interest of the corporation (i.e. the Association) may not always be synonymous with the best interest of all the shareholders (i.e. each individual unit owner). When these interests conflict, it is clear that a director owes the fiduciary duty to the corporation as a whole and not the individual shareholder. See, e.g., *Poliquin v. Sapp*, 390 N.E.2d 974, 977 (Ill. App. Ct. 1979) (holding that any breach of a fiduciary duty by directors would result in injury to the corporation and shareholders as a whole). Therefore, any breach of fiduciary duty by the Board members here injured the entire Association as opposed to an individual unit owner such as Ms. Ratner. The alleged injury is thus collective and does not provide a basis for Ms. Ratner, as one of many Village Square unit owners, to bring her suit.

*Statute of Limitations*

Defendants argue that even if Ms. Ratner had standing to pursue her suit, it is barred by the statute of limitations. This suit is governed by the general six-year statute of limitations applicable to civil actions. 12 V.S.A. § 511. Ms. Ratner filed her Complaint on February 14, 2011. Therefore, if her claims accrued anytime before February 14,

3

2005, her suit is time barred. The Vermont Supreme Court has set out the general principles regarding the accrual of claims as follows:

> [A] cause of action is generally said to accrue upon the discovery of facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery. Thus, the statute of limitation begins to run when the plaintiff has notice of information that would put a reasonable person on inquiry, and the plaintiff is ultimately chargeable with notice of all the facts that could have been obtained by the exercise of reasonable diligence in prosecuting the inquiry.

*Kaplan v. Morgan Stanley & Co.*, 2009 VT 78, ¶ 7, 186 Vt. 605, citing *Agency of Natural Resources v. Towns,* 168 Vt. 449, 452 (1998).. As the quotation makes clear, the time when the claim accrued is not judged by Ms. Ratner's subjective discovery of the facts but rather by an objective standard based on when a reasonable person would have discovered the relevant facts.

Defendants argue that the latest possible date that Ms. Ratner would have been put on inquiry notice was in December 2004. At that point, Ms. Ratner had actual notice that a special assessment would be levied to cover roof repairs. This is precisely the injury that she claims that she has suffered: the Association's reserve funds were inadequate to pay for the roof repairs, so a special assessment needed to be levied. Although it is more than conceivable that Ms. Ratner's claim actually accrued earlier, such as when she received the financial documentation accompanying the purchase of her unit in November 2001, showing the amount of available reserves, the Court concludes that the present claims accrued no later than December 2004 when Ms. Ratner received actual notice of the particulars of the special assessment for roof repairs.

Nevertheless, Ms. Ratner argues that a single special assessment was not sufficient to put her on notice that the reserves may have been inadequate. She notes that the special assessment was originally scheduled to end in 2007, yet the special assessments have continued beyond that date. She contends that it was not until the 2007 combination of this failure of the special assessments to end and her hot water outage that she should have been aware of her potential claims against Defendants. Ms. Ratner's argument misapprehends the nature of her claims. The crux of her suit is not that she was unfairly charged for any one needed repair, but that the Association failed to maintain adequate reserves to cover all necessary repairs. The accrual of the suit thus turns on when a reasonable person would be put on notice that the reserves were potentially insufficient to cover the necessary repairs.

At the latest, a reasonable person would be on notice of this problem at the latest at the point when the first special assessment was actually assessed in December of 2004, because this is the point when the potential injury became a

4

reality for owners. Although Ms. Ratner could not know the full extent of all possible future special assessments at this time, the inability to calculate all damages does not stop the statute of limitations from running. See *Fritzeen v. Gravel*, 2003 VT 54, ¶ 14, 175 Vt. 537 (mem.) (holding that the statute of limitations began running when plaintiffs had sufficient information to be aware of defendant's negligence even though all potential damages could not yet be calculated at that point). Even if Ms. Ratner had standing to bring this direct action against Defendants, her suit is time barred because it was not filed within six years of December 2004, when, at the latest, her claims accrued.[1]

## ORDER

Defendant's Motion for Summary Judgment is *granted*

Dated at Rutland this 27th day of August, 2012.

_____
Hon. Mary Miles Teachout
Superior Judge

---

[1] Based on the Court's disposition of the standing and statute of limitations issues, the Court need not reach Defendants' contention that this suit must be dismissed as to Defendant Richard Fowler because of his death during the pendency of this litigation.