*Brining v. Hayes*, No. 507-11-17 Wrcv (Gerety, J., Nov. 21, 2018).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

SUPERIOR COURT                                              CIVIL DIVISION
Windsor Unit                                          Docket No. 507-11-17 Wrcv

> Jennifer Brining, Individually and as Trustee vs. Thomas Hayes

## DECISION AND ORDER GRANTING MOTION TO DISMISS INDIVIDUAL CLAIMS (MPR2)

Count 1, Breach of Fiduciary Duty (507-11-17 Wrcv)

Title:            Motion to Dismiss (Motion 2)
Filer:            Defendant Thomas Hayes
Attorney:       Christopher D. Ekman, Esq.
Filed Date:    March 19, 2018

Alison J. Bell, Esq., Attorney for Plaintiff Jennifer Brining, filed an opposition on 4/4/18.


Defendant moves to dismiss all claims made individually by Plaintiff, pursuant to V.R.C.P. 12(b)(1) and (6), asserting that Plaintiff lacks standing to bring an action to recover for her alleged individual harm.

Motions to dismiss are disfavored and are rarely granted. *Gilman v. Maine Mutual Fire Ins. Co.,* 175 Vt. 554, 830 A.2d 71, 2003 VT 55, ¶ 14 (mem.). The purpose of a motion to dismiss is to test the law of the case, not the facts which underlie the complaint. *Kane v. Lamothe,* 182 Vt. 241, 936 A.2d 1303, 2007 VT 91, ¶ 14. In considering a motion to dismiss, the Court assumes all factual allegations in the complaint to be true and gives the benefit of all reasonable inferences to the non-moving party. *Richards v. Town of Norwich,* 169 Vt. 44, 48, 726 A.2d 81 (1999). A motion to dismiss should not be granted unless it is beyond doubt that there exist no facts or circumstances which would entitle the plaintiff to relief. *Assoc. of Haystack Property Owners, Inc. v. Sprague,* 145 Vt. 443, 446-47, 494 A.2d 122 (1985).

<u>Factual Allegations</u>

In October 2014, Plaintiff invested $1,306,250 into SendLater Inc. (SLI), a Vermont Corporation, through a trust she controlled called the Jennifer Brining Living Trust. SLI was a new business intended by the couple who had originally conceived of it, Nancy and Romano Formichella, to be an internet-based service that would permit individuals to have messages,

videos, and gifts sent to loved ones after the individuals' deaths.  At the time of Plaintiff's initial investment, the President/CEO, director and shareholder of SLI was John J. Donovan.  Thomas Hayes was the attorney who did the legal work to incorporate SLI as a Vermont corporation in the first instance.  He also acted as corporate counsel, director, Secretary, and Treasurer.

Shortly after Plaintiff and others began investing funds with SLI, Securenet, care of Mr. Donovan or Mr. Donovan in his own name began presenting invoices to Attorney Hayes who, in turn, approved all of the invoices in full and made out checks or arranged wires paying all of them.  He did so without determining that Mr. Donovan was entitled to invoice SLI or provided value to SLI.  For example, in 2015, SLI, as authorized solely by Attorney Hayes, paid Securenet or Mr. Donovan $1,019.750.  This payment was deposited directly into Mr. Donovan's personal bank account.  In 2016, SLI, as authorized solely by Attorney Hayes, paid to Securenet or Mr. Donovan another $870,200.  From May 22, 2014 through August 2016, the payments by SLI of funds to Mr. Donovan amounted to about $2,353,000 out of a total invested of about $2,358,000.

Plaintiff, by her counsel, has made several demands that SLI produce to her records as to its current financial status.  SLI, by its subsequent litigation counsel, has refused all such requests.

### Defendant's Motion

In his Motion to Dismiss, Defendant asserts that Plaintiff has not alleged an injury separate and distinct from other shareholders, or a wrong involving a contractual right unique to her that exists independently of any right of the corporation.  Because Plaintiff, in effect, claims that Defendant's mismanagement caused her and other shareholders to lose their investment, Defendant argues that she has stated a derivative claim.  Defendant contends that Plaintiff lacks standing for individual losses and that the Court thus lacks subject matter jurisdiction over her claim, or, in the alternative, her Complaint should be dismissed for lack of any factual allegations to sustain a direct action.

Plaintiff responds by arguing that SLI is a close corporation and that the Vermont Supreme Court would apply the majority rule to permit a direct claim in the close corporation context for a breach of fiduciary duty.  Defendant replies that Plaintiff is a "general" corporation because it was never incorporated as a "close corporation" pursuant to 11A V.S.A. § 20.02.

### Discussion

In Vermont, "[t]he general principles governing shareholder suits are well settled. In a derivative suit, the shareholder sues on behalf of the corporation for harm done to the corporation; in a direct action, the shareholder brings suit individually, or on behalf of a class of shareholders, for injuries done to them in their individual capacities." *Bovee v. Lyndonville Sav. Bank & Tr. Co.*, 174 Vt. 507, 508 (2002) (citing *Kramer v. W. Pac. Indus., Inc.,* 546 A.2d 348, 351

2

(Del.1988); *Lash v. Lash Furniture Co. of Barre, Inc.,* 130 Vt. 517, 522 (1972)) (shareholder derivative action is one brought in the interest of corporation).  "To have standing to sue individually, the shareholder must allege an injury separate and distinct from other shareholders, or a wrong involving a contractual right of the shareholder that exists independently of any right of the corporation."  *Id*.  (citing *Kramer,* 546 A.2d at 351).

Here, even giving Plaintiff the benefit of all reasonable doubts and inferences, the Court concludes, for several reasons, that Plaintiff has failed to sufficiently allege a direct claim against Defendant.  Plaintiff's Complaint alleges that Defendant "knowingly, negligently, and recklessly" breached his fiduciary duty owed to SLI, Plaintiff, and the other SLI shareholders by failing to safeguard SLI's assets, to secure ordinary protections for the SIL Board and its shareholders, and by failing to make certain disclosures to SLI, Plaintiff, and the other shareholders.  Additionally, Plaintiff alleges that Defendant "aided and abetted, knowingly participated in, and substantially assisted" Mr. Donovan's conduct, permitting him to: loot the funds that Plaintiff and the other shareholders had invested in SLI; wrongfully become a controlling shareholder; and dilute the shareholdings and control of others.  Consequently, Plaintiff alleges that she, SLI, and the other shareholders have sustained damages in excess of $2,350,000.  These allegations, assumed true, fail to establish that Plaintiff suffered an injury distinct from other shareholders or that Defendant breached any contractual right separate from that of the other SLI shareholders.  Cf. *Bovee*, 174 Vt. at 509.  As such, these claims are derivative in nature.

Further, Plaintiff has failed to persuade the Court that, even assuming SLI is treated as a closely held corporation, she would not be obligated to allege a harm separate and distinct from the other shareholders.  Cf. *Palmer v. Fox Software, Inc.*, 107 F.3d 415, 419 (6th Cir. 1997) (minority shareholder in closely held corporation could not maintain suit against other minority shareholders for misappropriation of corporate opportunity, unjust enrichment, and constructive trust where damages claimed were sustained by corporation generally, and accused shareholders sustained losses of same sort as complaining shareholder).  In arguing that the "overwhelming current majority rule is that an individual shareholder of a close corporation has standing to bring a direct claim against others in the close corporation for breach of fiduciary duty," Plaintiff relies on *Horizon House-Microwave, Inc. v. Bazzy*, 21 Mass. App. Ct. 190, 486 N.E.2d 70 (1985).  That case involved a corporate merger resulting in dilution of the plaintiff's common stock holdings in a closely held corporation in which the plaintiff's brother was the controlling officer and stockholder.  The plaintiff was permitted to bring a direct claim in that case where his grievance was that he was "cashed out" of the company while his brother attained a larger equity in the surviving entity and discriminated against the plaintiff in the distribution of shares.  *Id*. at 190-95.  Such circumstances are distinguishable from the instant scenario, which does not allege distinct injury.

Plaintiff also relies on *Webber v. Webber Oil Co.*, which included a direct claim in the context of a close corporation by a treasurer against majority shareholders accused of disproportionately reducing the treasurer's salary.  495 A.2d 1215, 1224-1225 (Me. 1985).  And, in *Durham v. Durham*, likewise cited by Plaintiff, a direct claim was permitted in a close

corporation context by a shareholder against shareholder-directors who excluded the plaintiff from management of the corporation, despite the fact that he was a director and owned 40 percent of the shares. 871 A.2d 41, 43 (N.H. 2005). The circumstances in both cases reflect that each litigant had alleged a harm clearly separate from the other shareholders. By contrast, in the instant case, the actions of Defendant complained of, as alleged, did not injure Plaintiff in a way that was separate and distinct from the injury to SLI.

Significantly, although the issue of attorney-client relationship is more complicated in a closely held corporation, where the line between individual and corporate representation can become blurred, many courts have refused to recognize a duty to nonclient shareholders in a close corporation. *Bovee v. Gravel*, 174 Vt. 486, 489 (2002) (quoting *United States v. Edwards*, 39 F.Supp.2d 716, 731-32 (M.D.La. 1999)). In this vein, the Vermont Supreme Court in *Bovee v. Gravel*, held that a corporation's attorneys owed no duty to shareholders allegedly damaged by the attorneys' malpractice in advising the corporation about liability insurance coverage, failing to advise the corporation to pursue bad faith claims against insurers, and pursuing a meritless suit on behalf of the corporation, and, thus, the shareholders lacked standing to bring a malpractice action. *Id*. In that case, the shareholders did not allege that the corporation was a mere formality indistinguishable from the shareholders or that they were third-party beneficiaries, and the shareholders were not in privity with the attorneys. *Id*. Therefore, the trial court's dismissal of the complaint was affirmed. External courts have similarly held that "the attorney for a corporation, even a closely held one, does not have a specific fiduciary duty toward the individual shareholders." *Kopka v. Kamensky and Rubenstein*, 354 Ill.App.3d 930, 939, 821 N.E.2d 719, 727 (2004) (citing *Hager-Freeman v. Spircoff*, 229 Ill.App.3d 262, 277-78, 171 Ill.Dec. 1, 593 N.E.2d 821 (1992); *Hoggett v. Brown*, 971 S.W.2d 472, 488 (Tex. App. 1997). Cf. *Taylor v. Riley*, 162 Idaho 692, 403 P.3d 636 (2017) (referencing controlling shareholder's prior action against law firm and attorney, in which Supreme Court determined that shareholder failed to demonstrate privity necessary to sue law firm and attorney for legal malpractice and breach of fiduciary duty arising from representation of corporation in shareholder's suit to enforce agreement). In light of this line of cases, the Court finds the lack of privity between Plaintiff shareholder and Defendant attorney for the corporation to further undercut Plaintiff's direct claims.

Based on all of the above, the Court concludes that dismisssal of Plaintiff's direct claims against Defendant is warranted. Accordingly, Defendant's Motion to Dismiss is GRANTED.

This decision in no way precludes Plaintiff's derivative suit against Defendant.

Dated at Woodstock, Vermont on November 3, 2018:

_____
Robert P. Gerety
Superior Court Judge