## Barbara L. Bourne, Personally and as Attorney in Fact, Armando P. Lonardo and Anna M. Lonardo v. Patrick Lajoie and Sherry Lajoie, and Peter J. R. Martin

[540 A.2d 359]

No. 85-012

Present: **Hill, Peck, Gibson and Hayes, JJ.,**[1] **and Barney, C.J. (Ret.), Specially Assigned**

Opinion Filed October 30, 1987

Motion for Reargument Denied December 10, 1987

---

[1] Justice Hayes was present for oral argument but did not participate in the decision.

46

*Linton & Linton, P.C.*, Burlington, for Plaintiffs-Appellants.

*Mickenberg, Dunn, Sirotkin & Kupersmith* and *Franklin L. Kochman*, Burlington, for Defendants-Appellees.

**Peck, J.** Plaintiff, Barbara Bourne, appeals from the reformation of a deed and from the dismissal of an accompanying legal malpractice action. We reverse and remand.

Plaintiff Bourne (Bourne) entered into negotiations with the defendants Patrick and Sherry Lajoie for the sale of her farm in

the late summer of 1981. According to town records and aerial photographs, the farm consisted of two hundred forty-eight unsurveyed acres. The farm was made up of two parts: the home farm, which contained one hundred eighteen acres, and the Carpenter Hill Farm, which contained one hundred thirty acres.

After extensive negotiations regarding the parties' respective concerns about subdivision and tillable acres, the sale price for the farm was set at $210,000. The number of tillable acres was a crucial component of the sale because this amount was necessary to support the dairy herd the Lajoies intended to keep.

In accordance with the negotiations, Bourne was to retain six acres from the home farm and thirty acres from the Carpenter Hill Farm. The thirty acres to be retained from the Carpenter Hill Farm consisted of five two-acre parcels abutting the north side of Carpenter Hill Road and two ten-acre parcels to the north of the parcels abutting the road. The parties also negotiated for two rights of way, ensuring access to the two ten-acre parcels and the parcel conveyed to the Lajoies. The farm conveyed to the Lajoies was to contain two hundred twenty acres, more or less; one hundred sixty of which were to be tillable acres.

The Lajoies' attorney prepared a deposit receipt and sales agreement which described the farm and the mode of conveyance. Between execution of the agreement and the closing, however, Bourne conveyed the farm to her parents, the Lonardos. The Lonardos executed a power of attorney to Bourne, authorizing her to be their attorney in fact for all matters concerning the farm. The parties closed on the sale five months after execution of the agreement, and Bourne gave a warranty deed to the Lajoies in the Lonardos' name. The deed was made subject to the prior deposit receipt and sales agreement. Defendant Peter J. R. Martin, Bourne's attorney, prepared the deed.

The deed drafted by Martin was not in conformity with the deposit receipt and sales agreement. It neglected to include the two ten-acre lots north of the lots abutting Carpenter Hill Road in this list of reserved lots and failed to identify the two reserved rights of way. Both parties executed the deed without mention of the omissions.

Martin discovered the errors in the deed one month later. Upon request by Martin, the Lajoies declined to execute a corrective deed because they believed that to do so would reduce the number of tillable acres below what they had bargained for. Bourne

then brought suit, seeking reformation of the deed in accordance with the deposit receipt and sales agreement. She also brought a malpractice action against Martin, claiming negligence by him in the preparation of the deed. The Lajoies answered Bourne's complaint by counterclaiming, seeking specific performance of the warranty deed to ensure that the farm would contain one hundred sixty tillable acres.

Litigation focused on the section of the farm located north of Carpenter Hill Road that contained the two ten-acre parcels of land which Martin had omitted from the deed. The Lajoies introduced a survey of this piece, prepared for the litigation, which showed that the entire parcel contained seventy-six acres rather than the eight-five acres the parties had believed it contained. The survey also designated a boundary for the Lajoies' property along the edge of an old cornfield, which was marked by a large maple tree stump. Using this boundary the Lajoies' parcel contained fifty-five acres, leaving Bourne the remaining twenty-one acres, or nine acres less than she had expected to receive. The survey made no mention of the other parcels of land contained within the farm as a whole. Bourne introduced the Trudell map that plotted the lots retained by her in the deposit receipt and sales agreement, amounting to thirty acres. The Trudell map identified a total of eighty acres, thus allotting the Lajoies fifty acres rather than the fifty-five acres set forth in the agreement and deed.

The trial court accepted the Lajoies' survey acreage figure and determined that the boundary set forth in the survey accurately reflected the parties' agreement. The court reformed the deed accordingly, thus rejecting the plan laid out in the Trudell map. As a result of this reformation, the Lajoies received fifty-five acres and Bourne experienced a shortage of nine acres. The court also reformed the deed to include the omitted rights of way. The trial court then dismissed the malpractice complaint against Martin. It held that Martin's negligence was not a proximate cause of the land dispute and resulting lawsuit since, even if the deed had been prepared as Bourne had intended, this lawsuit would have followed, together with the relief in the form of reformation granted to the Lajoies as plaintiffs.

I.

██ Before addressing Bourne's appeal, we must first address the Lajoies' contentions that she lacks standing in her personal capacity to seek reformation of the deed and that only the Lonardos could bring such an action. While the right to seek reformation of a deed is limited to the original parties to the deed and their successors in title, *Hadlock* v. *Poutre*, 139 Vt. 124, 128, 423 A.2d 835, 837 (1980), this does not prevent Bourne from acting as the named plaintiff in the Lonardos' behalf as their designated attorney in fact. The Lajoies contend further that the Lonardos could not rely on the agreement or the negotiations which led up to it because they lacked personal knowledge of these transactions. But the deed to the Lonardos from Bourne was made subject to the deposit receipt and sales agreement to the Lajoies. As Bourne's successors in title, therefore, the Lonardos were entitled to rely on the agreement as a basis for reforming the deed, as well as upon testimony and evidence elicited to explain the effect of the agreement.

██ On the merits, Bourne first contends that the court erred in reforming the deed and in setting the boundary along the edge of the cornfield rather than in accordance with the Trudell map. She asserts that the deposit receipt and sales agreement unequivocally establishes her entitlement to a reservation of thirty acres as part of the sale of her farm, as described by the Trudell map.

A party seeking reformation has the burden of establishing beyond reasonable doubt "that there existed, previous to the deed, a valid agreement representing a standard to which the erroneous writing can be reformed, so as to express the true transaction between the parties." *LaRock* v. *Hill*, 131 Vt. 528, 530, 310 A.2d 124, 126 (1973) (citing *deNeergaard* v. *Dillingham*, 123 Vt. 327, 331, 187 A.2d 494, 497 (1963)). Moreover,

> "[r]eformation is appropriate, when an agreement has been made, or a transaction has been entered into or determined upon, as intended by all the parties interested, but in reducing such agreement or transaction in writing, either through the mistake common to both parties, or through the mistake of the plaintiff accompanied by the fraudulent knowledge and procurement of the defendant, the written instrument fails to express the real agreement or transaction."

*Id.* at 530-31, 310 A.2d at 126 (quoting 2 J. Pomeroy, Equity Jurisprudence § 870 (3d ed. 1905)).

Bourne contends that the court properly found that a "mistake common to both parties" had occurred in their execution of the faulty deed, but erred in refusing to rely on the deposit receipt and sales agreement as the "standard" for reforming the erroneous writing. The Lajoies and Martin acknowledge that Martin did not draft the deed in conformity with the parties' intentions. The deed is, therefore, marred by a mistake as envisioned by *LaRock*, 131 Vt. at 530-31, 310 A.2d at 126, which became mutual when the deed was executed and accepted,[2] and reformation of the deed was appropriate. Nevertheless, the subsequent reformation itself is flawed.

The Trudell map referred to in the parties' signed agreement, which was recorded in the town clerk's office, establishes a boundary that is clearly inconsistent with the cornfield-maple tree boundary established by the court. In light of the map, it cannot be said that the boundary established by the court represents the intent of the parties beyond a reasonable doubt, as required by *LaRock*, 131 Vt. at 530, 310 A.2d at 126. See also *Kilcullen* v. *Dery*, 133 Vt. 140, 142, 334 A.2d 410, 411-12 (1975) (accentuating the higher burden required to reform a deed than that required to settle an ambiguity about a boundary contained in a deed).

■ We agree with Bourne's further contention that the deposit receipt and sales agreement represents the proper standard for reforming the deed. The agreement, reviewed against the record, establishes beyond a reasonable doubt that the parties intended the conveyance to provide the Lajoies with a farm containing two hundred twenty acres, more or less, of which one hundred sixty would be tillable acres, while at the same time allowing Bourne to retain thirty acres, more or less, north of Carpenter Hill Road, for subdivision. The tillable acres component of the transaction, though not expressly set forth in the agreement, was clearly the critical element for the Lajoies as evidenced by the record and the court's findings.

■ It cannot be determined from the record, however, whether the Lajoies would retain one hundred sixty tillable acres if the

---

[2] Neither party addresses the question of negligence in the signing of the deed, and we do not feel compelled to raise it sua sponte. See *Johnson* v. *Johnson*, 125 Vt. 470, 473, 218 A.2d 43, 45 (1966) ("Failure to read an instrument before signing it does not bar relief in equity, even to the point of reformation.").

deed is reformed to allow Bourne to receive the thirty acres described in the purchase and sale agreement. The survey of the Carpenter Hill North piece demonstrated that the piece included seventy-six, rather than the eighty-five acres it had been expected to provide, and Bourne does not dispute this fact. The court found that the parties intended that the Lajoies would receive fifty-five tillable acres from that piece; if Bourne receives thirty acres from the parcel, then the Lajoies would retain only forty-six tillable acres from the piece, or nine less than they expected to receive. According to the record, the Carpenter Hill North piece is the only part of the farm that has been surveyed. Consequently, the record is insufficient to tell us whether the known deficiency in the surveyed land is made up by the existence of excess tillable acreage in the unsurveyed land conveyed to the Lajoies. Therefore, it cannot be determined whether granting Bourne thirty acres in the Carpenter Hill North parcel would deprive the Lajoies of the total amount of tillable acreage they expected to receive. Absent such a finding, reformation to provide Bourne thirty acres is not an appropriate remedy.

Bourne contends that reformation is an appropriate remedy even if it would result in a nine-acre deficiency in the acreage allotted to the Lajoies. Relying on *Moonves* v. *Hill*, 134 Vt. 352, 354, 360 A.2d 59, 61 (1976), she asserts that nine acres is not a "substantial shortage" when the sale is viewed as a whole, and therefore not determinative. The rule of *Moonves*, however, applies to a sale in gross, while the conveyance in this case resembles more closely a sale per tillable acre, with each tillable acre a crucial component of the sale. The court found that both parties agreed that the Lajoies required one hundred sixty tillable acres to support the farm's dairy herd. Any shortage would materially affect the benefit of the bargain they expected to receive.

For their part, the Lajoies contend that, if the agreement is relied upon, its identification of the Carpenter Hill North parcel as providing fifty-five acres to them without the qualifying words of "more or less" should be controlling. Their interpretation would thus preclude providing Bourne with the thirty acres from that piece. The importance of the acreage provided by the Carpenter Hill piece was for its provision of sufficient tillable acres to ensure that the Lajoies received the required one hundred sixty acres, rather than for the provision of fifty-five acres, regardless of its character, as the Lajoies' argument implies. The existence or lack

of the precautionary words "more or less" in the agreement's description of the different pieces of the farm does not control this element of the transaction.

■ The Lajoies also contend that Bourne is not entitled to reformation because she made deceptive representations about the farm during the transaction for its sale. See *Burlington Savings Bank* v. *Rafoul*, 124 Vt. 427, 432, 209 A.2d 738, 741-42 (1965). We agree with the trial court's determination that the errors which occurred in this case were errors in mathematics made by both parties, rather than deceptive acts or acts of constructive fraud committed by Bourne.

In sum, we conclude that the deposit receipt and sales agreement provides the appropriate standard for reforming the deed. From the record it is apparent that the agreement represents the parties' understanding that the Lajoies would receive a farm containing one hundred sixty tillable acres, and Bourne would retain thirty acres from the Carpenter Hill parcel. The deed cannot be reformed in accordance with this agreement, however, because it cannot be determined from the record whether providing Bourne with this acreage would simultaneously deprive the Lajoies of the tillable acreage they expected to receive.

Therefore, the case must be remanded for findings on the number of tillable acres contained in the entire farm; this is necessary in order to assess the effect of the proven nine-acre deficiency in the Carpenter Hill North parcel. If the deficiency can be satisfied from the other parcels, and if the Lajoies would still receive one hundred sixty tillable acres, then the deed may be reformed to allow Bourne her thirty-acre reservation. If, however, reformation would result in the Lajoies receiving less than one hundred sixty tillable acres, then the deed should be rescinded. Where either party would be deprived of the benefit of their bargain by reformation, the parties' agreement is viewed as being founded on mutual mistake and without a meeting of the minds. Under such circumstances, rescission is the appropriate remedy. See *Moonves* v. *Hill*, 134 Vt. at 354, 360 A.2d at 61.

## II.

Bourne also appeals from the dismissal of the malpractice complaint against Martin. Martin acknowledged on the witness stand that he. had been negligent in preparing the deed, and the only

issue before the trial court was whether, and to what extent, Martin's negligence caused damages to Bourne. The trial court concluded that Martin's negligent draftsmanship was not the proximate cause of any damages suffered by Bourne and dismissed the malpractice complaint sounding in negligence. This determination was erroneous.

█ Under either of the possible outcomes identified in Part I of this opinion, Bourne will have suffered damages because of the omission of the two ten-acre lots from the deed. Whether through reformation or rescission, Bourne will recover title to the twenty acres of which she was divested by the negligent drafting of the deed. In either event, Bourne has suffered damages as a result of her inability to recover profits from haying the land because of her lack of title and the fees and expenses she incurred in bringing the reformation action to recover title to the land. See *Winter v. Brown*, 365 A.2d 381, 384 (D.C. Ct. App. 1976).[3] We cannot agree, however, with Bourne's contention that she suffered damages in the form of a lost opportunity to sell the two parcels omitted from the deed. This contention is based only on her speculation that she would have been able to sell the property, rather than on evidence of an actual offer from a prospective purchaser which she was unable to pursue.

*Reversed and remanded for a hearing on the number of tillable acres contained by the total farm and for a determination of damages.*

## ON MOTION TO REARGUE

Because defendant has failed to direct this Court's attention to points of law or fact previously overlooked or misapprehended, his motion for reargument under V.R.A.P. 40 is denied. Defendant brought to our attention an error in the Court's language which we have corrected. The revision does not change the result, and the entry order is not affected.

---

[3] While attorney's fees and costs normally are not recoverable, *Gramatan Home Investors Corp.* v. *Starling*, 143 Vt. 527, 535, 470 A.2d 1157, 1162 (1983), here "[t]he risk of the expenditure of sums of money for costs of litigation, including attorney's fees, *directly* flowed from the breach of the duty owed by the [*defendant attorney* . . . .]" to Bourne. *Ramp* v. *St. Paul Fire & Marine Insurance Co.*, 263 La. 774, 787, 269 So. 2d 239, 244 (1972) (emphasis added).

*Motion for reargument denied.*