2003 VT 54

**Eric and Louise FRITZEEN and William and Constance B. Coates v. John GRAVEL, Esq.**

[830 A.2d 49]

No. 02-075

¶ 1. May 23, 2003. Plaintiffs Eric and Louise Fritzeen and William and Constance B. Coates appeal a decision of the Chittenden Superior Court granting summary judgment to defendant, attorney John Gravel. The trial court found that plaintiffs' claim for legal malpractice was barred by 12 V.S.A. § 511 ("A civil action . . . shall be commenced within six years after the cause of action accrues and not thereafter."). Plaintiffs argue that the trial court erred in determining that the cause of action accrued before the conclusion of the appeal in the underlying proceeding. We affirm.

¶ 2. The trial court found the following undisputed facts. Attorney Gravel, defendant, represented plaintiffs from August 1993 to June 1994 in connection with an ongoing condominium development project. Plaintiffs had obtained a new wastewater permit in January 1992, which their neighbors opposed. The neighbors sought revocation of the permit in a hearing before the Agency of Natural Resources' Department of Environmental Conservation (the Department), and plaintiffs prevailed. Defendant assumed representation of plaintiffs when the neighbors appealed the decision of the Department to the Water Resources Board in August 1993.[1] On October 21, 1993, legal counsel to the Water Resources Board circulated to all parties a detailed list of the specific exhibits

---

[1] Plaintiffs' previous attorney withdrew from the case because he retired from the practice of law.

before the Board on appeal. The parties then had an opportunity to supplement the record with additional exhibits. The exhibits list on record did not include certain technical documentation that the Department had relied upon for its decision in support of plaintiffs' position. Defendant did not attempt to supplement the record with these documents on behalf of his clients.

¶ 3. On June 1, 1994, the Water Resources Board reversed the Department's decision and remanded the matter for further revocation proceedings because "the record does not fairly and reasonably support the ANR's conclusion[s]" that the wastewater disposal system met several requirements of the Environmental Protection Rules. One week later, defendant wrote a letter to plaintiffs in which he notified them of the outcome and identified four future courses of action. Attorney Liam Murphy then assumed representation of plaintiffs and, on June 16, 1994, filed a motion to correct the decision with the Water Resources Board.

¶ 4. In July 1994, attorney Murphy filed plaintiffs' motion to supplement the record on appeal along with an attached affidavit from plaintiff Eric Fritzeen in which Fritzeen expressed his knowledge that defendant had not supplemented the file before the Water Resources Board with documents supportive of plaintiffs' position. Plaintiff Fritzeen's sworn statement included the following language:

> At no time did [defendant] ever inform me of receipt of the October 1993 memorandum from the Board counsel which indicated that the Board record was limited to seven listed exhibits and that any party wishing to supplement the record would have to file a petition to the Board. . . . At the Board hearing on the revocation, a number of

questions were asked by Board members about certain data and plans and [defendant] replied that such data was part of the file. I understood at that time the entire file was before the Water Resources Board.... Certain critical information and plans that are necessary for the Board to make a just decision on the complete record were omitted from the original exhibits and if I had known earlier that these were not a part of the Record, I would have petitioned the Board to include them.

At the hearing on the motions held in August 1994, attorney Murphy responded to the hearing officer's inquiry concerning "good reasons for failure to present" the additional evidence, see 3 V.S.A. § 815(b), by stating that "the prior lawyers in this case did an inadequate job in presenting ... [and] that certainly may leave [plaintiffs] with a malpractice suit ... against [defendant,] the lawyer that represented him on appeal." The Board issued its written decision on September 14, 1994, denying plaintiffs' motions to correct the decision and supplement the record on appeal. Plaintiffs filed a notice of appeal to this Court, which was later dismissed by stipulation of the parties in December 1995.

¶ 5. On December 9, 1994, a year before the stipulated dismissal of the appeal, attorney Murphy wrote a letter to defendant Gravel, notifying him that plaintiffs were considering a malpractice action against defendant based on the omission of documents and the limited record presented on appeal to the Water Resources Board. Attorney Murphy explained in his letter that he "discovered the problem when [he] read the Water Resources Board decision and it stated that there was no evidence relating to the percolation test data in the record." He wrote that, after reviewing the record

and finding it only contained limited exhibits, he immediately filed the motion to supplement the record on July 5, 1994.

¶ 6. Plaintiffs then waited until June 15, 2001 to file this action.[2] On January 18, 2002, the trial court granted summary judgment to defendant, finding that the action had accrued by December 9, 1994 at the latest and thus was barred by the six-year statute of limitations in 12 V.S.A. § 511. This appeal followed.

¶ 7. We review a summary judgment determination on appeal using the same standard as the trial court: summary judgment is appropriate when the record demonstrates that there is no genuine issue of material fact remaining and a party is entitled to judgment as a matter of law. *Politi v. Tyler*, 170 Vt. 428, 431, 751 A.2d 788, 790 (2000); V.R.C.P. 56(c)(3). In determining whether there is a genuine issue as to any material fact, we will accept as true all allegations made in opposition to the motion for summary judgment, so long as they are supported by admissible evidence. *Politi*, 170 Vt. at 431, 751 A.2d at 790.

¶ 8. In order to sustain a legal malpractice claim, plaintiffs have the burden of proving that defendant was negligent and that this negligence was the proximate cause of harm to plaintiffs. *Powers v. Hayes*, 172 Vt. 535, 536, 776 A.2d 374, 375 (2001) (mem.). Pursuant to 12 V.S.A. § 511, plaintiffs had six years in which to bring their malpractice claim once the cause of action had accrued. See 12 V.S.A. § 511; *Fitzgerald v. Congleton*, 155 Vt. 283, 293, 583 A.2d 595, 601 (1990) (holding that legal malpractice claims alleging economic loss are governed by

---

[2] Plaintiffs had previously filed a separate action alleging negligence and breach of contract against the engineering firm that designed the first wastewater system. See *Fritzeen v. Trudell Consulting Eng'rs, Inc.*, 170 Vt. 632, 751 A.2d 293 (2000) (mem.).

statute of limitations in § 511). For purposes of the limitation period, accrual occurs at the time the injury is discovered. *Howard Bank, N.A. v. Estate of Pope*, 156 Vt. 537, 538, 593 A.2d 471, 472 (1991). The time limit begins to run at that point in time when the "plaintiff had information, or should have obtained information, sufficient to put a reasonable person on notice that a particular defendant may have been liable for the plaintiff's injuries." *Rodrigue v. VALCO Enters., Inc.*, 169 Vt. 539, 541, 726 A.2d 61, 63 (1999) (mem.); *Peltz v. Shidler*, 952 P.2d 793, 796 (Colo. Ct. App. 1997) ("The focus is on a plaintiff's knowledge of facts that would put a reasonable person on notice of the general nature of damage and that the damage was caused by the wrongful conduct of an attorney."). Plaintiffs do not claim here that the knowledge element of the alleged wrongful conduct was absent; they concede that there was knowledge of the conduct as early as August 1994 when plaintiffs represented to the Board that defendant had done an inadequate job in presenting evidence for the Board's review.

¶ 9. Plaintiffs assert, however, that the trial court did err in concluding that the malpractice action accrued before the appeal to this Court was dismissed on December 5, 1995 because, they argue, until that time the very existence of damages was questionable. Plaintiffs contend the trial court incorrectly determined that damages were present in 1994 and thus erroneously concluded that plaintiffs' cause of action accrued in 1994. Plaintiffs would have us adopt, in place of the discovery rule, an "exhaustion of appeals" approach, which would either toll the time limitation or defer the timing of accrual in a malpractice case until the appeals process is finally concluded in the underlying proceeding. We decline to do so in this case.

¶ 10. The Legislature's enactment of time limits represents the desire to achieve a balance between the competing interests of the parties, *Inv. Props., Inc. v. Lyttle*, 169 Vt. 487, 492, 739 A.2d 1222, 1226-27 (1999), and in time, "the right to be free of stale claims ... comes to prevail over the right to prosecute them." *Order of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 349 (1944). In the effort to obtain such a balance and carry out the legislative intent, we have utilized the discovery rule. The discovery rule simply provides a *starting* point for the six-year limitations period; the plaintiff's case need not be "airtight" before the limitations period commences. *Rodrigue*, 169 Vt. at 540-41, 726 A.2d at 63.

¶ 11. Only a small number of jurisdictions use the "exhaustion of appeals" approach that plaintiffs urge here. Significantly, each of the jurisdictions cited by plaintiffs for the direct use of this approach have comparatively short two-year limitations periods to enforce legal malpractice claims. See *Joel Erik Thompson, Ltd. v. Holder*, 965 P.2d 82, 82 (Ariz. Ct. App. 1998) ("When legal malpractice occurs in the course of litigation, the malpractice claim does not accrue, and the statute of limitations does not start to run, until the appellate process in the underlying litigation is completed or is waived by a failure to appeal.") (internal quotation marks omitted); *Silvestrone v. Edell*, 721 So. 2d 1173, 1175, 1175 n.2 (Fla. 1998) ("[T]he statute of limitations does not commence to run until the final judgment becomes final."; "[A] judgment becomes final either upon the expiration of the time for filing an appeal ... or, if an appeal is taken, upon the appeal being affirmed ...."); *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 119 (Tex. 2001) ("When an attorney commits malpractice in the prosecution or defense of a claim that results in litigation, the statute of limitations on a malpractice claim against that attorney is tolled until all appeals on the underlying claim are exhausted or the litigation is otherwise finally concluded."). Thus, the policy concern —

that a client will have to adopt inherently inconsistent litigation postures in the underlying case and the malpractice case — is not as strong here where the statute of limitations is six years. We note that after plaintiffs' appeal to this Court was dismissed, over four years still remained in which they could file their malpractice action pursuant to the limitations period, yet plaintiffs chose to wait five and one-half years from dismissal of the appeal before filing their claim. Cf. *Belden v. Emmerman*, 560 N.E.2d 1180, 1182-83 (Ill. App. Ct. 1990) (declining to apply "exhaustion of appeals" approach where the plaintiffs had notice of sufficient information regarding the existence of damages on the date of the trial court's order and noting that the plaintiffs had ample time to file the malpractice claim within the five-year limitations period even after the appellate court's decision). Finally, such an approach would frustrate the balance intended by the Legislature by allowing a plaintiff to unfairly manipulate the time in which to bring the action despite his or her earlier discovery of the defendant's potential liability for an injury.

¶ 12. In further support of their contention that legal malpractice claims arising in the context of litigation may not accrue until a decision has been finalized through the appeals process, plaintiffs cite cases holding that the statute of limitations does not begin to run until the litigation is concluded by final judgment. See, e.g., *Lucey v. Law Offices of Pretzel & Stouffer*, 703 N.E.2d 473, 479 (Ill. App. Ct. 1998) ("Illinois courts have frequently recognized ... a cause of action for legal malpractice will rarely accrue prior to the entry of an adverse judgment, settlement, or dismissal of the underlying action in which plaintiff has become entangled due to the purportedly negligent advice of his attorney."); *Kopicko v. Young*, 971 P.2d 789, 791 (Nev. 1998) ("malpractice action ... did not accrue until dismissal because no legal damages had yet been sustained as a result of the alleged negligence."). Plaintiffs claim, in part, that accrual must wait because the viability of the malpractice action depends on the outcome of the underlying litigation. We agree to the extent that plaintiffs could not have maintained a cause of action prior to the adverse judgment of the Water Resources Board. See *Lucey*, 703 N.E.2d at 478 ("When uncertainty exists as to the very fact of damages, as opposed to the amount of damages, damages are speculative, and no cause of action for malpractice can be said to exist.") (internal citation omitted). On the facts of this case, however, we do not believe accrual must linger until the conclusion of the appeals process. A cause of action may still exist where uncertainty only as to the *amount* of damages is present, and the plaintiff can recover additional attorney's fees or litigation costs incurred due to the defendant-attorney's neglect or failure to act. *Id.*; see also *Bourne v. Lajoie*, 149 Vt. 45, 53, 540 A.2d 359, 363-64 (1987) (holding that the plaintiff in a legal malpractice action suffered damages in the form of legal fees and expenses she incurred in an attempt to correct the defendant-attorney's mistake despite the fact that the legal proceedings would eventually result in a correction of the mistake).

¶ 13. Although the appeals process had not concluded, the Water Resources Board had issued an adverse decision of which plaintiffs had notice. While plaintiffs' desire to bring a claim may have been dependent on the outcome of the appeals process due to the amount of damages they would receive, the viability of their claim in this case was not dependent on the outcome. For example, plaintiffs suffered an injury when, following the adverse decision of the Water Resources Board, they hired new counsel and incurred legal expenses for filing the motions to correct the decision and to supplement the record of appeal, as a

direct result of defendant's failure to supplement the record before the Board. See, e.g., *Bourne*, 149 Vt. at 53, 540 A.2d at 363-64; *Peltz*, 952 P.2d at 796 ("Once a client becomes aware of the attorney's negligence and incurs damage in the form of legal fees to ameliorate the impact of that negligence, he or she has suffered injury for the purpose of accrual of a legal claim."). Indeed, plaintiffs themselves made exactly this argument at the hearing on the motions by blaming defendant's "inadequate job" for the failure to present evidence. Thus, if we are to believe plaintiffs' own argument, the motions — and resulting legal expenses — would not have been necessary but for defendant's conduct. Additionally, we find plaintiffs' current argument, speculating that they would have incurred these fees regardless of defendant's conduct, to be without merit for the purposes of accrual. Cf. *Bourne*, 149 Vt. at 53, 540 A.2d at 364 (declining to award damages based on missed sale opportunities where such damages were based on mere speculation and were unsupported by evidence).

¶ 14. Although the extent of damages may not have been known, plaintiffs had notice of sufficient information surrounding the general nature of damages, and they knew that defendant may have been liable for such injury, by December 9, 1994. Plaintiffs waited more than six years from that date to file their claim, and thus it was time-barred by the statute of limitations contained in 12 V.S.A. § 511.

*Affirmed.*

Note. Justice Dooley sat at oral argument but did not participate in this decision.