VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.     25-AP-235



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

JANUARY TERM,   2026

Misty McCartney v. David Burns\* and      }     APPEALED FROM:
Melissa Haberman\*                         }
                                          }     Superior Court, Franklin Unit, Civil Division
                                          }     CASE NO. 21-CV-01474
                                          }     Trial Judge: Samuel Hoar, Jr.

In the above-entitled cause, the Clerk will enter:

Defendants appeal from the trial court's decision in this dispute between neighboring property owners. We affirm.

## I. Procedural History

The parties own adjacent property and a dispute arose over their respective rights to a right-of-way. Plaintiff filed suit, seeking declaratory and injunctive relief and damages for trespass and nuisance, among other claims; defendants filed counterclaims. The court held a bench trial and made findings regarding the right-of-way. It awarded plaintiff damages for trespass and nuisance, and rejected all the remaining claims.

The court made the following findings. Plaintiff owns property northwest of the lot where defendants reside. Defendants also own property adjacent to plaintiff's property that they rent out to others (referred to as the "Rental Property"). Plaintiff's property is an irregularly shaped lot with a house and barn; the house is closer to the road and the barn is directly behind the house. The Rental Property similarly consists of an irregularly shaped lot with a house and barn; the house is closer to the road and the barn is directly behind the house. The house on the Rental Property sits on what has been called "Parcel One" and the barn on the Rental Property sits on "Parcel Two." Parcel Two is rectilinear and twelve feet narrower on plaintiff's side than Parcel One.

The parties share use of a gravel driveway. The driveway is located substantially on plaintiff's property with approximately three feet of its width on the Rental Property. The gravel drive has never been properly delineated and its bounds varied over time. The court found that

both parties, in their pleadings and during trial, admitted that this was a "shared" drive. Ultimately, as described below, the court determined that the easement in question was first created in 1905, operating in favor of plaintiff's property and Parcel Two of the Rental Property (where the barn sits). A 1974 deed confirmed that the easement was reciprocal but the deed's description of the easement reflected a mutual mistake regarding the location of the property line and the distances between the two houses and between the property line and each of the houses. The court reformed the deed to implement the parties' intent, resulting in a fifteen-foot right-of-way passing equally across the two properties, with the actual shared drive limited to eight feet in width.

In reaching its conclusion, the court traced plaintiff's title back to 1905 where a W.G. Mansfield owned both plaintiff's property and the Rental Property. In 1905, he conveyed Parcel One of the Rental Property (containing the house) to a Mr. Rushford. Mansfield retained what later became plaintiff's property as well as the property that subsequently became Parcel Two of the Rental Property (containing the barn). In his conveyance of Parcel One, Mr. Mansfield reserved a "right of way" over Parcel One "at any and all times for the purpose of removing manure from my barn and shed adjoining thereto." The court found that the referenced "barn" was now defendants' barn on Parcel Two and the "shed" was now plaintiff's barn at the rear of her parcel. The court found that the right-of-way set forth in the 1905 deed was expressly reserved in a 1920 deed in which one Downey conveyed Parcel One to Haile. The court found that subsequent deeds in defendants' chain-of-title were silent with respect to the right-of-way but there was no evidence that the right-of-way was ever abandoned.

The Gilberts came to own what became plaintiff's property and Parcel Two (where defendants' barn now sits). In 1974, the Gilberts conveyed Parcel Two through a straw transaction to one Towle who also owned Parcel One. The conveyance of Parcel Two included "a right of way twenty feet (20') in width for ingress and egress of vehicular and pedestrian traffic, to be used in common with the grantors, their heirs and assigns. The width of said right of way shall be measured from the northerly edge of [Parcel One]." The court found it clear that whoever described this right-of-way was completely ignorant of the actual boundary line of Parcel One or the location of the house owned by plaintiff's predecessor-in-title. The "northerly edge" of Parcel One was eleven feet from what became plaintiff's house and the distance between the two houses was only slightly more than twenty-two feet.

Based on the 1974 conveyance referenced above, titles to Parcel One and Parcel Two merged. Title to this property passed through an intermediate deed to the St. Onges and then to a Mr. Healy who took title in June 2001. Prior to that transfer, in August 2000, defendant Haberman, and her then co-owner, conveyed an easement over the property containing what is now defendants' residence to the St. Onges for a shared right-of-way to be used as a driveway. The easement ran with the land and passed to Healy when he acquired the land; the St. Onges' deed to Healy also expressly conveyed this right-of-way. (This right-of-way is not at issue in this case.) Healy owned the Rental Property until March 2016, when he executed a deed in lieu of foreclosure. Defendants acquired the Rental Property in August 2016 and have owned it since that time. Defendants never occupied the Rental Property; it has been used as a rental property since approximately 2019.

Meanwhile, plaintiff's property passed through two intermediate deeds to a Mr. McLernon, who purchased it in October 2004. During McLernon's ownership, there was always

2

a gravel drive between his property and the Rental Property. Healy and his tenants at the Rental Property used the drive with the understanding that it was a resource shared by the two neighboring properties. Without objection from McLernon, Healy would park one car along his house and another alongside his barn.

In August 2012, Healy had his property surveyed by a Mr. Chaffee. The court found that the Chaffee survey accurately and precisely laid out the boundary lines of the Rental Property, including the shared boundary line with plaintiff's property. The survey also accurately depicted the location of the various structures that existed then and presently, as well as the location and scope of the gravel drive as it then existed. At the edge of the town highway right-of-way, the gravel drive was slightly more than fifteen feet wide. By the time it reached a point parallel to the corner of plaintiff's house, the gravel drive narrowed to approximately ten feet, and it maintained that approximate width for the rest of its length to plaintiff's barn. For the first approximately fifty-nine feet of its length, approximately 3.75 feet of the gravel drive's width was on defendants' side of the property line, with the remainder on plaintiff's side. In its current configuration, the gravel drive extended farther onto the Rental Property, such that it was not possible to park adjacent to the rental house without parking within the gravel drive. There was nevertheless sufficient room between the houses (barely) to allow each party to park vehicles alongside their houses without interfering with the other's right of access.

Plaintiff purchased her property from McLernon in 2019. Soon thereafter, defendant Burns began behaving in a passive-aggressive way toward plaintiff and her property rights. McLernon had previously allowed defendant Burns to use his lawnmower, for example, and although the lawnmower was conveyed to plaintiff, defendant Burns claimed to own it. He also claimed the right to use a dumpster on plaintiff's property. Defendant Burns approached plaintiff with a copy of the Chaffee survey and told plaintiff he wanted the tenants at the Rental Property to park in the shared driveway. The court considered this an odd request because there was abundant room to park multiple vehicles in the drive between the Rental Property and defendants' home, and the Rental Property had benefited for years from a parking easement in that space. Indeed, the lease for the Rental Property required the tenants to park within the parking easement. When plaintiff pointed out that the survey made clear that the shared driveway afforded defendants only an easement for ingress and egress, defendant Burns walked away.

Defendant Burns then began a persistent, provocative, and pernicious campaign to interfere with plaintiff's property rights. When plaintiff had a lawyer friend send a letter to defendants asking them to cease their behavior, defendants' behavior escalated. Over the following months and years, defendant Burns deliberately parked his vehicle in the shared driveway in a calculated way to block plaintiff in, or to make it nearly impossible for her to enter or exit her car. Defendant Burns waited, sometimes until the wee hours of the morning, until plaintiff parked and exited her vehicle before moving his truck from wherever it was parked to a spot clearly intended to make it difficult or impossible for plaintiff to exit the property. Sometimes, he parked so close that plaintiff had to crawl in through her passenger door to get to the driver's seat. Other times, before plaintiff returned home at the end of the day, defendant Burns parked his truck to make it extremely difficult or impossible for plaintiff to use the shared drive. Defendant Haberman sporadically engaged in similar behavior, and she clearly knew of, and endorsed, defendant Burns's activities. During snow events, defendant Burns would also deliberately shovel snow from the Rental Property into snowbanks in the shared drive and even

3

onto plaintiff's property, with the clear purpose and effect of interfering with plaintiff's exercise of her property rights. Plaintiff began plowing a portion of her front yard so she could park where defendant Burns could not obstruct her ingress and egress.

Defendants never resided in the Rental Property or used the shared drive to access their barn; they accessed the barn from their home property's side of the Rental Property. Defendants never used the shared drive for "ingress or egress." The court found that defendant Burns used the shared drive only to park in ways calculated to frustrate plaintiff's rights, all while there was ample parking on defendants' side of the Rental Property.

Defendant Burns acknowledged some of these incidents but attempted to minimize them or explain them away. The court rejected these attempts as incredible and concluded that defendant Burns acted in an unmistakable intentional way to interfere with plaintiff's property rights. The court described several additional incidents where defendant Burns caused actual property damage to plaintiff. It also noted that at least once, defendant Burns deliberately left a pile of animal feces at the foot of plaintiff's back steps. The court found that defendants' incessant harassment took an emotional toll on plaintiff. It caused plaintiff annoyance, discomfort, and inconvenience well beyond what one might be expected to endure in a civilized society. Plaintiff became hypervigilant and fearful of going outside, and she lost sleep. The harassment impacted her work and relationships.

Based on these and other findings, the court first addressed the boundary between plaintiff's property and the Rental Property, and the parties' rights in what all parties had referred to as the "shared drive" between the two properties. The parties agreed that the Chaffee survey accurately depicted the property line. The court found that they also agreed, through their pleadings and repeated references throughout the case, that both parties had rights to the "shared drive"; their disagreement concerned the scope and purpose of the easement underlying the shared drive.

As recounted above, the court concluded that the easement was first created by Mansfield in 1905, and it operated in favor of both plaintiff's property and Parcel Two of the Rental Property (where the barn was located). The 1974 deed of Parcel Two to Towle, with its reference to an easement "to be used in common with the grantors, their heirs and assigns," confirmed that the easement was reciprocal. The evidence established beyond a reasonable doubt that the deed description of a twenty-foot right-of-way over plaintiff's property in favor of the Rental Property, measured from the property line, reflected a mutual mistake as to the location of the property line, the distances between the two houses, and between the property line and each house. The parties to the 1974 deed could not have intended to create a right-of-way that extended nine feet into the house on plaintiff's property. Instead, the court found that the parties intended to clarify that what had previously been only a right-of-way over Parcel One (where the house is located) in favor of plaintiff's property had become by practice a shared right-of-way located between plaintiff's property and the Rental Property. The court considered the subsequent behavior of Healy and McClernon fully consistent with this understanding.

The court concluded that the deed contained a mutual mistake and must be reformed to express the parties' true intent. To this end, it held that the right-of-way, to be truly "shared," must pass equally across the two properties. It considered this conclusion bolstered by the fact that the boundary line between the two properties roughly bisected the space between them. To

4

ensure that the right-of-way was wide enough for reasonable use and maintenance—without interfering with the parties' right to use their properties to park next to their respective properties—the court found the right-of-way to be fifteen feet wide with the actual shared drive eight feet wide.

The court then turned to plaintiff's nuisance and trespass claims. It concluded that plaintiff proved a series of trespasses and a continuing private nuisance, both committed by defendant Burns. It awarded actual damages of $950 for physical damages that defendant Burns caused to plaintiff's vehicles and $50 in nominal damages for defendant Burns's multiple discrete trespasses onto plaintiff's property. With respect to the nuisance claim, the court awarded $15,000 to plaintiff as reasonable compensation for the annoyance, discomfort, and inconvenience she suffered. Given the persistent and provocative nature of defendant Burns' behavior, the court issued a permanent injunction against both defendants to foreclose further violations of plaintiff's rights. The court denied all of the parties' remaining claims. Defendants appeal.

## II. Arguments on Appeal

Defendants first challenge the court's finding that "[b]oth parties, in their pleadings, admit that this is a 'shared' drive." They contend that the court misconstrued their answer to plaintiff's complaint. Defendants' answer referenced "[t]he shared common driveway," but they argue that they did not admit in their answer that any portion of the right-of-way was on the Rental Property.[*] In a related vein, defendants assert that the court erred in reforming the deed to find that both properties were benefited and burdened by a fifteen-foot right-of-way, bisected for the first 58.86 feet of its length by the property line between the two properties, with an eight-foot gravel drive in the center of the right-of-way. Defendants appear to agree that reformation was warranted but contend that the deed should have been reformed so that the right-of-way was exclusively on plaintiff's property. They reason that: the court erroneously found that the 1905 easement created a right-of-way for ingress and egress that ran with the land; the easement in the 1974 deed is unconnected to the 1905 deed; and the court should have concluded, based on the 1974 deed, that the easement began at the northern boundary of Parcel Two.

In its decision, the court found that the parties agreed that the Chaffee survey accurately depicted the property line, and "[t]hey also agree[d], through their pleadings and repeated references throughout the case, that both parties ha[d] rights to the 'shared drive'; the disagreement [was] over the scope and purpose of the easement that underlies the shared drive." This finding is not erroneous. Defendants specifically referenced the "shared common driveway" in their answer to plaintiff's complaint, which was the language the court used. The court recognized that there was a dispute about the scope of the right-of-way and its purpose.

Defendants' real complaint appears to be with the way in which the court reformed the deed based on its finding of the parties' intent. "Reformation is an equitable remedy used to

---

[*] Defendants refer in their brief to the language in a 2001 deed from St. Onge to Healy rather than the language of the 1974 deed from the Gilberts conveying Parcel Two to Towle (who at that time also owned Parcel One), cited by the trial court. To the extent that defendants are asserting that the description of the right-of-way was modified in the later conveyance, we reject that argument.

rewrite a contract to accurately reflect the parties' intended agreement." Van Berkom v. Cordonnier, 2011 ND 239, ¶ 11, 807 N.W.2d 802 (quotation omitted); see also Bourne v. Lajoie, 149 Vt. 45, 50 (1987) ("Reformation is appropriate, when an agreement has been made . . . but in reducing such agreement or transaction in writing, . . . through the mistake common to both parties, . . . the written instrument fails to express the real agreement or transaction." (quotation omitted)).  To be entitled to such relief, proof must be made "beyond reasonable doubt that there existed, previous to the deed, a valid agreement representing a standard to which the erroneous writing can be reformed, so as to express the true transaction between the parties." Lajoie, 149 Vt. at 49 (quotation omitted); see also 28 Williston on Contracts 70:209 (4th ed.) (recognizing that "[r]eformation of a contract is the appropriate equitable remedy when the mistake is one as to expression" and it "should result in a revision of the contract to make it express the true intention of parties").

The court's decision here is factually driven; it does not present a question of law as defendants assert.  As one court explained:

> Each case involving the reformation of a contract on grounds of fraud or mutual mistake must be determined upon its own particular facts and circumstances.  In cases involving reformation, parol evidence is admissible to both establish the existence of a mutual mistake and demonstrate the actual intentions of the parties.

Cordonnier, 2011 ND 239, ¶ 12 (quotation and citation omitted); see also 28 Williston on Contracts, supra, § 70:135 ("Because the thrust of a reformation claim is that a writing does not set forth the actual agreement of the parties, generally the parol evidence rule does not apply to bar proof in the form of parol or extrinsic evidence, of the claimed agreement.").  Stated differently:

> Each case must . . . turn on its particular facts, and the evidentiary weight to be attached to a writing will depend, in part, on its inherent credibility in the light of those facts.  Once the court is convinced that the writing fails to express the agreement of the parties, the writing loses its usual evidentiary effect with respect to other matters, such as the ascertainment of the parties' actual agreement.

Restatement (Second) of Contracts § 155 (1981).

Our review of the court's decision is therefore deferential.  See Lofts Essex, LLC v. Strategis Floor & Décor Inc., 2019 VT 82, ¶ 17, 211 Vt. 204 (recognizing that "[t]his Court's review of a trial court's findings . . . following a bench trial is limited" (quotation omitted)).  "A trial court's factual findings will not be disturbed on appeal unless clearly erroneous when viewed in the light most favorable to the prevailing party," and "[a] finding will not be disturbed merely because it is contradicted by substantial evidence." Id. (quotations omitted).  Instead, "an appellant must show there is no credible evidence to support the finding." Id. (quotation omitted).  We defer to the trial court's assessment of witness credibility and the weight of the evidence, and we will affirm its conclusions "where they are reasonably drawn from the evidence presented." Id. (quotation omitted).

The court did not err in finding that the easement was first created by Mansfield in 1905 when he reserved a "right of way" over Parcel One to use "at any and all times" to remove materials in the barn and shed. We reject defendants' assertion that the court was required to conclude, as a matter of law, that the conveyance did not create a right-of-way that ran with the land but instead was personal to Mansfield and terminated when he sold his remaining property.

"An appurtenant easement is one that serves a parcel of land rather than a particular person, and a construction that an easement is appurtenant is favored." Rowe v. Lavanway, 2006 VT 47, ¶ 12, 180 Vt. 505 (mem.). While "the owner of an appurtenant easement may be said to benefit personally by its use, the benefit lasts only as long as the owner owns the land, and when conveyed, it passes to a new owner." Barrett v. Kunz, 158 Vt. 15, 18 (1992). "By contrast, personal easements, or easements in gross, are intended to benefit only the holder," and are usually "created for a limited purpose and a limited duration." Id. "Because a personal easement exists apart from a holder's ownership of land, there is no dominant tenement, and the easement expires when the property is conveyed unless specifically reserved." Id. (recognizing that "[p]ersonal easements are typically those held by utility companies, which give them access to land to erect poles and lines, but they hold no dominant estate").

The court here reasonably concluded that the right-of-way served the land and that the evidence did not "indicate that [Mansfield] had any personal interest in securing a right of way" in the land he conveyed "distinct from [his] interest as owner of the lot not conveyed." Sabins v. McAllister, 116 Vt. 302, 305 (1950), overruled, in part, on other grounds by Lague, Inc. v. Royea, 152 Vt. 499, 502-03 (1989). A subsequent deed in 1920, moreover, specifically reserved the same right-of-way reserved in the Mansfield-Rushford deed when conveying Parcel One of the Rental Property and the court found no evidence that the right-of-way was abandoned.

The court similarly did not err in concluding that the 1974 deed of Parcel Two from the Gilberts to Towle, by referring to a "right of way . . . for ingress and egress of vehicular and pedestrian traffic, to be used in common with the grantors, their heirs and assigns," confirmed that the right-of-way easement was reciprocal and benefitted both properties. Defendants do not appear to challenge the conclusion that the deed must be reformed based on a mutual mistake. They instead contend that the court should have retained the "starting point" of the easement recited in the deed. As set forth above, however, once the court determined that reformation was required, its responsibility was to discern and implement the parties' intent. It found that the parties intended to clarify that, what had previously been only a right-of-way over Parcel One in favor of plaintiff's property, had become by practice a shared right-of-way located between plaintiff's property and the Rental Property, and that Healy and McClearnon subsequently acted consistently with this understanding. To be truly "shared," the court held that the right-of-way must pass equally across the two properties, adding as additional support that the boundary line between the two properties roughly bisected the space between them. It found the right-of-way to be fifteen feet wide, with the actual shared drive as eight feet wide, to allow for reasonable use and maintenance, without interfering with the parties' right to use their properties to park next to their respective properties. In ascertaining the parties' intent, the court could look to the parties' behavior following execution of the deed, contrary to defendants' suggestion otherwise. The court's conclusion is supported by its findings and the evidence. While defendants disagree with the result, they have not established error.

We do not address defendants' final claim of error because it is premised on succeeding on the first two arguments above. We have reviewed all the arguments discernable in defendants' brief and consider them without merit.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
Harold E. Eaton, Jr., Associate Justice


_____
Nancy J. Waples, Associate Justice